UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

| | |
|---|---|
| DAVID MCLEAN and JUSTINE VIETS-MCLEAN, as next friends of Eliza McLean, a minor, and Individually, : : : : Plaintiffs, : : v. : Case No. 1:12-cv-241-jgm : AIR METHODS CORPORATION, INC., : : Defendant. : : | |

MEMORANDUM AND ORDER
(Docs. 72, 73, 74, 75)

I.  Introduction

Defendant Air Methods Corporation, Inc. ("Air Methods") has filed motions to exclude the testimony of Plaintiffs' experts Mike Clingerman, Stephen Hood Greene, and William Gamble. (Docs. 72, 73, 74.) Plaintiffs David McLean and Justine Viets-McLean, as next friend of their daughter Eliza McLean, and individually (the "McLeans"), oppose these motions and have filed a motion to strike Air Methods' experts Dr. Jonathan Muraskas and Douglas E. Stimpson. (Doc. 75.) Defendant opposes this motion. The facts in this case are discussed as they apply to the challenges of the expert testimony. For the reasons set forth below, the motions are granted in part and denied in part.

II. Discussion

A. Expert Testimony Under Daubert and the Federal Rules of Evidence

The decision to admit or exclude expert testimony lies in the Court's discretion. Zaremba v. Gen. Motors Corp., 360 F.3d 355, 357 (2d Cir. 2004). Federal Rule of Evidence 702 governs the admissibility of expert testimony. Under that Rule, the Court has discretionary authority to

determine reliability in light of the facts and circumstances of the particular case. Kumho Tire Co. v. Carmichael, 526 U.S. 137, 158 (1999). If the Court finds the evidence admissible, the opposing party may still contest the weight of the evidence within the adversarial system. Amorgianos v. Nat'l R.R. Passenger Corp., 303 F.3d 256, 267 (2d Cir. 2002). "Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." Daubert v. Merrell Dow Pharm., Inc., 509 U.S. 579, 596 (1993). Rule 702 provides:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

Fed. R. Evid. 702.

Rule 702's requirement that the evidence assist the trier of fact to understand the evidence or determine a fact in issue is essentially a requirement that the evidence be relevant. Daubert, 509 U.S. at 591. In the context of scientific evidence, the issue of relevance also has been called "fit." Id. The fit of the facts and methodology to the conclusion does not have to be exact. "A minor flaw in an expert's reasoning or a slight modification of an otherwise reliable method will not render an expert's opinion per se inadmissible. The judge should only exclude the evidence if the flaw is large enough that the expert lacks 'good grounds' for his or her conclusions." Amorgianos, 303 F.3d at 267 (internal quotation marks and citation omitted).

Rule 702 also requires the expert testimony be the product of "reliable principles and methods." The Daubert Court set forth five factors for a court to consider in making this determination: (1) whether the theory or technique can be or has been tested; (2) whether the

theory has been subjected to peer review and publication; (3) the known or potential rate of error; (4) whether the technique's operation is subject to standards governing its application; and (5) the general acceptance within the relevant scientific community. 509 U.S. at 593-94. This list is not exclusive, no single factor is dispositive, and the application of factors depends on the particular circumstances of the particular case. Kumho Tire, 526 U.S. at 150; see Blanchard v. Eli Lilly & Co., 207 F. Supp. 2d 308, 316 (D. Vt. 2002) ("[T]he 'specific factors that Daubert mentioned' need only be considered 'when doing so will help determine that testimony's reliability.'" (quoting id. at 142)). The Daubert principles extend equally to non-scientific testimony. Kumho Tire, 526 U.S. at 150.

Finally, the testimony must be based on sufficient facts or data. The term "data" encompasses the reliable opinions of other experts and "facts or data" is broad language allowing an expert to rely on hypothetical facts supported by the evidence. Fed. R. Evid. 702 advisory committee's note. "[E]xpert testimony should be excluded if it is speculative or conjectural; the [a]dmission of expert testimony based on speculative assumptions is an abuse of discretion." Major League Baseball Props., Inc. v. Salvino, Inc., 542 F.3d 290, 311 (2d Cir. 2008) (internal quotation marks and citation omitted)). The Court's inquiry must focus on the methodology used by the expert, and not the conclusions reached. Daubert, 509 U.S. at 595. The Court, however, is not obligated to accept a conclusion that does not reliably flow from the facts available and methodologies used. Amorgianos, 303 F.3d at 266.

    B.    Application of the Standard

        1.    Mike Clingerman

The McLeans disclosed Mike Clingerman as an expert in helicopter maintenance and inspection. Clingerman is currently a maintenance manager at a facility that maintains and repairs aircraft. (Doc. 80-2 at 2.) Clingerman holds a Federal Aviation Administration ("FAA") Inspection

Authorization and has over 20 years of experience in general aviation maintenance and, specifically, in the maintenance and inspection of air medical transport helicopters.  Id.

In his report, Clingerman concludes that Corporate Jets "failed to comply with company standards and industry standard and federal regulations with regard to the maintenance, inspection, repair, and documentation of the Med Towers installed on the three Bell 430 helicopters.  As a result, a burning smell developed on a Med Tower with unresolved problems on July 27th, 2001 that caused a flight to be aborted and Eliza's transport to be delayed." (Doc. 80-2 at 4.)  Specifically, Clingerman opines that "[t]he burning event most probably arose from mechanical failure from the Med Tower's inverter and/or air pump." (Doc. 80-2 at 4.)

Air Methods argues Clingerman's expert testimony should be excluded because it is based on insufficient facts or data, is not the product of a reliable methodology, and is speculative. (Doc. 72-1 at 8.)  To arrive at his conclusion that Corporate Jets' negligence led to the burning smell incident, Clingerman reviewed, among other documents, Corporate Jets' "Aircraft Historical Records" for both helicopters along with at least six of the deposition transcripts of Corporate Jets' employees involved in transporting Eliza. (Doc. 80-2 at 9.)  He generated a spreadsheet to track "discrepancies organized by date" (Doc. 80-6 at 4) relating to Corporate Jets' maintenance issues with both helicopters and their med towers.  Id. at 2-7.  Clingerman found that Corporate Jets "consistently had problems" with the med towers and "[i]n most cases" the med tower "discrepancies were not corrected right away and [Corporate Jets] swapped out the [m]ed [t]ower with the discrepancy[] with a med tower from another aircraft to keep the 'out of service time' down to a minimum." (Doc. 80-2 at 5.)

Clingerman's report is not so problematic as to be inadmissible.  His methodology and opinions, which Air Methods disagrees with and counters with its own expert, "reliably flow" from

4

the available facts in this case.  Amorgianos, 303 F.3d at 266 (citation omitted).  To the extent it relies on the deposition of Georgan Matthews, a nurse aboard the first helicopter who testified the pilot of the first helicopter told her (months after the incident) that technicians found "charring" inside the med tower, see Doc. 80 at 9, Clingerman's testimony and report considers sufficient other facts and data (i.e., the helicopter maintenance records) to rise beyond a mere "mouthpiece" of a lay witness.  See Rotman v. Progressive Ins. Co., 5:12-cv-67, 2013 WL 3293531, at *8 (D. Vt. June 28, 2013).  His lack of inspection of the helicopter and med tower, 12 years after the incident, goes to the weight of his testimony, not its admissibility.  See, e.g., Fernandez v. Chios Shipping Co., Ltd., 542 F.2d 145, 154 (2d Cir. 1976); Nanda v. Ford Motor Co., 509 F.2d 213, 221 (7th Cir. 1974) ("Defendant argues that 'an actual examination of the vehicle or at a bare minimum some physical evidence is absolutely essential' as a basis for expert testimony.  There is of course no such rule . . . .  That the expert did not have the advantage of an inspection of the vehicle goes to the weight of his testimony, not its admissibility.").  Clingerman's testimony is ripe for cross-examination.  Daubert, 509 U.S. at 596; see Fed. R. Evid. 702 advisory committee's note ("'[T]he trial court's role as gatekeeper is not intended to serve as a replacement for the adversary system.'" (quoting United States v. 14.38 Acres of Land Situated in Leflore County, Mississippi, 80 F.3d 1074, 1078 (5th Cir. 1996)).

      Clingerman may not, however, testify as to his conclusions, see Doc. 72-1 at 4-5 (quoting Clingerman's deposition testimony), that there must have been some sort of conspiracy or cover-up among Corporate Jets' mechanics to conceal or destroy evidence of the burning smell incident.  The Court finds this testimony wholly speculative, unsupported by the evidence, and impermissible at trial.  See Major League Baseball Props., Inc., 542 F.3d at 311.  Finally, the Court does not address the parties' substantive legal arguments on Vermont law of negligence and causation as it relates to

Clingerman's testimony, which are more appropriately presented in the parties' papers surrounding Air Methods' motion for summary judgment. (Docs. 71-1, 85, 89.) Air Methods' motion to exclude Clingerman is thus granted in part and denied in part.

    2.    <u>Stephen Hood Greene</u>

The McLeans disclosed Stephen Hood Greene as an expert in air medical transport piloting. Greene has 28 years of experience as an air medical helicopter pilot and previously worked for Air Methods. (Doc. 79-2 at 2.) Greene's testimony focuses on the conduct of the second helicopter's pilot. Greene concludes the second pilot "failed to conform to the professional standards of practice in air medical transport by not properly assessing the fuel requirements for the mission of transporting the neonate [Eliza] in helicopter 2 following the aborted flight of helicopter 1." (Doc. 79-2 at 5.) Specifically, Greene contends that "[i]n choosing to unnecessarily fuel at Saginaw Airport instead of departing the Hospital properly fueled, [Corporate Jets] and Pilot 2 caused the loss of critical time in the neonate transfer. This failure negated a portion of the helicopter's speed advantage and significantly delayed the patient's eventual arrival at the University." <u>Id.</u> Greene also provides three alternative rendezvous points he believes would have been "considerably better" choices to meet the ambulance transporting Eliza. <u>Id.</u> at 6-7. The McLeans argue this delay proximately caused Eliza's injuries. (Doc. 79 at 16.)

Air Methods contends Greene's testimony is irrelevant, based on insufficient facts and data, and is not the product of reliable methods. (Doc. 74-1 at 1.) In essence, it claims Greene impermissibly guesses what the helicopter's fuel payload should have been because the rendezvous point and payload were unknown at the time of liftoff. <u>Id.</u> at 10. Air Methods argues Greene's testimony is also irrelevant because a University of Michigan's employee, not Corporate Jets, was responsible for coordinating the rendezvous point. <u>Id.</u> at 14.

Greene opines that "[f]light planning by an air medical pilot . . . is crucial to the mission and to the patient's condition on board the aircraft." (Doc. 79-2 at 6.) To arrive at his conclusions, he "conservative[ly]" estimates the weight difference between the first helicopter (carrying four medical crew members and an isolette) and the second helicopter (carrying only the pilot) and calculates the additional fuel the second helicopter conceivably could have carried. Id. at 5. Greene determines that if the second pilot had taken off with more fuel, it would not have needed to refuel in Saginaw and this would have saved at least 20 minutes. Id. at 6. He then plots three other rendezvous points that, if used, he believes would have allowed the transport team to deliver Eliza to the University of Michigan earlier. (Doc. 79-2 at 6-7.)

The Court finds Greene's use of the facts surrounding the second helicopter's mission and payload to arrive at his conclusions is not so flawed as to render his opinions inadmissible. "[T]here are many different kinds of experts, and many different kinds of expertise." Kumho Tire, 526 U.S. at 150. "[T]ied to the facts of [this] particular case," Greene has expertise that will assist the finder of fact, id. (internal quotation marks and citation omitted), and his conclusions concerning the second pilot's decision-making "reliably follow from the facts known to the expert and the methodology used." Amorgianos, 303 F.3d at 266 (quoting Heller v. Shaw Indus., Inc., 167 F.3d 146, 153 (3d Cir. 1999)). Air Methods may disagree with Greene's opinion, but "the mere fact that a difference of opinion exists does not make plaintiff's experts' conclusions inherently unreliable. Such differences of opinion and alleged weaknesses in the experts' methodologies will go to the weight to be given the expert testimony, not its admissibility." Guild v. Gen. Motors Corp., 53 F. Supp. 2d 363, 369 (W.D.N.Y. 1999); see Amorgianos, 303 F.3d at 267 ("minor flaw in an expert's reasoning . . . will not render an expert's opinion per se inadmissible"). Greene's testimony is also relevant because it will assist the jury in determining who was responsible for coordinating the

rendezvous point. Air Methods' objections are more appropriately directed to weight, not admissibility. Greene's methodology and conclusions are thus ripe for cross-examination. See Amorgianos, 303 F.3d at 267; Daubert, 509 U.S. at 596. Air Methods' motion to exclude Greene's expert testimony is denied.

    3.    William Gamble

The McLeans disclosed Gamble as a retired FAA inspector who concludes Corporate Jets had a duty to report the burning smell incident and was negligent when it did not do so. (Doc. 78-7 at 2, 4.) In his report, Gamble states that had the incident been reported, the FAA and National Transportation Safety Board would have investigated the matter. Id. at 4. Air Methods argues this testimony is irrelevant because (and Gamble concedes) it concerns only post-incident actions and therefore does not relate to causation. (Doc. 82 at 2.) The McLeans claim his testimony is relevant because (1) it would rebut any testimony that the incident did not have to be reported, (2) it relates to "the jury's consideration of [Corporate Jets'] negligent inspection practices" as a whole, and (3) it explains why the McLeans largely rely on circumstantial evidence in the case (i.e., their argument that there would have been more direct evidence if an investigation had occurred). (Doc. 78 at 10-11.)

The Court finds Gamble's testimony, which only concerns the actions of Corporate Jets after the burning smell incident, irrelevant because it would not assist the jury in determining an actual "fact in issue," i.e., whether Corporate Jets negligently caused the burning smell on July 27, 2001. Fed. R. Evid. 702; see Daubert, 509 U.S. at 591. Furthermore, as explained above, the McLeans' theory that a conspiracy existed to conceal or destroy evidence surrounding the burning smell incident is speculative at best. Gamble's testimony is inadmissible for that reason as well. See Major League Baseball Props., Inc., 542 F.3d at 311. But if Air Methods introduces testimony at

trial asserting Corporate Jets did not have to report the incident to authorities (for example, through the testimony of Air Methods' regional director of aviation, who stated in his deposition that "[a] smell's not regulatory" (Doc. 78 at 6)), the McLeans may use Gamble's testimony as a limited rebuttal. Air Methods' motion to exclude Gamble's testimony is therefore granted.

  4. Douglas E. Stimpson and Dr. Jonathan Muraskas

  Air Methods disclosed Stimpson as an aviation accident "reconstructionist." (Doc. 76 at 7.) He concludes that "[n]o action by Corporate Jets caused or contributed to the 'smell of burning electrical wire' on the incident flight." (Doc. 75-9 at 17.) In brief, Stimpson found "no empirical or actual evidence that the med tower generated the smoke that was reported by" the pilot. Id. at 11. His report also states the pilot of the second helicopter "used the correct procedure" when refueling at Saginaw. Id. at 17. The McLeans contend Stimpson's testimony should be excluded because (1) he does not have expertise in air medical transport piloting, (2) his report lacks sufficient facts or data and (3) his opinions are not based on reliable principles or methods. (Doc. 75-1 at 14.) Separately, the McLeans also seek to exclude Stimpson and Dr. Jonathan Muraskas, a physician prepared to testify on Air Methods' behalf concerning medical issues, because Air Methods disclosed the McLeans' Early Neutral Evaluation ("ENE") materials to both experts in violation of D. Vt. L. R. 16.1. (Doc. 75-1 at 6.)

  Stimpson is an experienced crash investigator and has been involved in approximately 2,800 aviation accidents in his career. (Doc. 76-5 at 2.) Although he is not an air medical transport pilot, the Court finds him appropriately qualified by his practical experience, training, and education to give an expert opinion--based on sufficiently reliable aircraft accident investigation methodology--regarding the cause of the burning smell incident and the second pilot's decision-making. Fed. R. Evid. 702; see McCullock v. H.B. Fuller Co., 61 F.3d 1038, 1043 (2d Cir. 1995) (Expert's "alleged

9

shortcomings," including lack of particular experience in interpreting air quality studies, "were properly explored on cross-examination and went to his testimony's weight and credibility--not its admissibility."). The McLeans' complaints about insufficient facts or data and unreliable methodology are similarly better suited for cross-examination. See Amorgianos, 303 F.3d at 267; Highland Capital Mgmt., L.P. v. Schneider, 551 F. Supp. 2d 173, 180 (S.D.N.Y. 2008) ("[T]he jury can best form a judgment when presented with . . . experts' competing theories." (quotation marks and citation omitted)).

  Finally, the McLeans contend the Court must exclude both Stimpson and Dr. Muraskas because Air Methods' counsel "unquestionably broke the applicable litigation rules" when it provided both experts with confidential ENE materials. (Doc. 75-1 at 11.) "Confidentiality is an important feature of the mediation and other alternative dispute resolution processes [and] [p]romising participants confidentiality in these proceedings promotes the free flow of information that may result in the settlement of a dispute, and protecting the integrity of alternative dispute resolution generally." In re Teligent, Inc., 640 F.3d 53, 57-58 (2d Cir. 2011) (internal quotation marks and citation omitted). The Second Circuit "vigorously enforce[s] the confidentiality provisions of [its] own alternative dispute resolution . . . because . . . confidentiality is 'essential' to [the program's] vitality and effectiveness." Id. at 58.

  The McLeans rely primarily on Irwin Seating Co. v. Int'l Business Machines Corp., 1:04-cv-568, 2006 WL 3446584 (W.D. Mich. Nov. 29, 2006), where a magistrate judge granted the defendants' motion to strike two of the plaintiff's experts based on the improper disclosure of confidential mediation statements and exhibits that the experts reviewed in forming their opinions. Id. at *1. The documents disclosed to the experts "were highlighted [by the defendants] at the request of the mediator to indicate those portions of the documents that the defendants believed to

10

be the most important." Id. Although both experts stated in subsequent affidavits that they did not remember the parties' mediation positions, the court excluded their testimony because "[t]he bell has been rung. There are simply some things that cannot be forgotten once they are learned." Id. at 3.

Air Methods concedes the disclosure occurred and argues (1) it was an oversight, (2) nothing confidential was actually disclosed, and (3) neither expert relied on the materials in forming their opinions (supported by the experts' affidavits). (Doc. 76 at 2-6.) According to the McLeans, the materials at issue here included (generally speaking) an "offer of compromise" (Doc. 75-1 at 7 n.2), their "counsel's interpretation of evidence," and their experts' "preliminary opinions" (Doc. 84 at 3 n.1.). The McLeans claim Air Methods had a "strategic advantage" because Stimpson and Muraskas had the ability to "frame their analysis based on Plaintiffs' confidential summaries of facts and opinions." Id. at 5.

Although confidentiality is undoubtedly "essential" to the mediation process, Teligent, 640 F.3d at 58, neither party can cite to a case within the Second Circuit--or any case, for that matter, other than Irwin Seating--where an expert has been stricken based on counsel's accidental disclosure of confidential ENE materials. The extreme sanction of striking both experts from testifying, based on an apparent mistake, is not warranted in this particular case. In contrast to Irwin Seating, neither Stimpson nor Dr. Muraskas cited the confidential materials in the body of their reports. 2006 WL 3446584 at *3. The Court accepts the experts' affidavits at their word that they did not rely on the ENE materials in forming their opinions. Moreover, none of the mediation materials will be introduced at trial (of course), and the Court finds any prejudice is not so unfair as to require striking both experts. The McLeans' motion to strike the testimony of Stimpson and Dr. Muraskas is denied.

III.     <u>Conclusion</u>

In conclusion, Air Methods' motion to exclude Mike Clingerman's testimony (Doc. 72) is GRANTED in part and DENIED in part; Air Methods' motion to exclude Stephen Hood Greene's testimony (Doc. 74) is DENIED; and Air Methods' motion to exclude William Gamble's testimony (Doc. 73) is GRANTED.  The McLeans' motion to strike the testimony of Douglas E. Stimpson and Dr. Jonathan Muraskas (Doc. 75) is DENIED.

SO ORDERED.

Dated at Brattleboro, in the District of Vermont, this 24th day of January, 2014.

/s/ J. Garvan Murtha<br>
Honorable J. Garvan Murtha<br>
United States District Judge