UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

| | |
|---|---|
| DAVID MCLEAN and JUSTINE VIETS-MCLEAN, as next friends of Eliza McLean, a minor, and Individually, | : |
| | : |
| | : |
| | : |
| Plaintiffs, | : |
| | : |
| v. | :   Case No. 1:12-cv-241-jgm |
| | : |
| AIR METHODS CORPORATION, INC., | : |
| | : |
| Defendant. | : |
| | : |

MEMORANDUM AND ORDER
(Doc. 71)

I.    Introduction

In October 2012, Plaintiffs David McLean and Justine Viets-McLean, as next friend of their

daughter Eliza McLean, and individually (collectively, the "McLeans"), brought this diversity action

in federal court.  (Doc. 1.)  The McLeans allege negligence against Corporate Jets, Inc. ("Corporate

Jets"), which Defendant Air Methods Corporation, Inc. ("Air Methods") acquired in 2007.

(Doc. 70.)  The claim arises from a delay in the Corporate Jets helicopter flight carrying Eliza shortly

after her birth in northern Michigan in 2001.  Air Methods moves for summary judgment dismissing

the case in its entirety.  (Doc. 71.)  The McLeans oppose the motion.  (Doc. 85.)  For the reasons

below, Air Methods' motion is denied.

II.    Factual Background[1]

On July 26, 2001, Eliza McLean was born prematurely at Northern Michigan Hospital in

Petoskey, Michigan.  (Doc. 71-2 ¶ 1; Doc. 1 ¶ 34.)  Her parents, who live in Vermont, were in

Michigan for a family reunion.  (Doc. 1 ¶ 35.)  A neonatologist recommended transferring Eliza to

---

[1] Unless otherwise indicated, the following facts are undisputed.

the University of Michigan Hospital in Ann Arbor, which had a high-frequency ventilator.
(Doc. 71-2 ¶ 2; Doc. 88 ¶ B.)  The University of Michigan agreed to accept Eliza and sent a
"Survival Flight" helicopter to pick her up.  (Doc. 71-2 ¶ 8; Doc. 88 ¶ B.)  The helicopter flew north
to Petoskey from Ann Arbor in approximately 95 minutes.  (Doc. 71-2 ¶ 9; Doc. 88 ¶ I.)  Corporate
Jets was the contractor that provided piloting and maintenance services for the University of
Michigan's Survival Flight helicopter transport program.  (Doc. 71-2 ¶ 3; Doc. 88 ¶¶ C-D.)

At approximately 1:59 a.m. on July 27, 2001, the helicopter took off from Petoskey carrying
the pilot, Eliza, and four University of Michigan medical personnel.  (Doc. 71-2 ¶ 10; Doc. 88 ¶ J.)
Two minutes later, the helicopter aborted its flight and immediately landed because of a burning
smell on board.  (Doc. 71-2 ¶ 11; Doc. 88 ¶ K.)  The medical team then decided to transport Eliza
in an ambulance toward Ann Arbor and meet a second Survival Flight helicopter en route.
(Doc. 71-2 ¶ 12; Doc. 88 ¶ L.)  As the ambulance headed south, the second helicopter took off from
Ann Arbor but stopped in Saginaw, Michigan to refuel.  (Doc. 71-2 ¶¶ 12-13; Doc. 88 ¶¶ L, M, T.)
The helicopter then flew from Saginaw to meet Eliza and the medical team at the West Branch
Community Airport in West Branch, Michigan.  (Doc. 71-2 ¶ 13; Doc. 88 ¶ M, T.)  At
approximately 4:18 a.m., the helicopter took off from West Branch with Eliza and the medical team,
arriving at the University of Michigan Hospital at approximately 5:15 a.m.  (Doc. 71-2 ¶ 14; Doc. 88
¶ N.)  The McLeans allege that during the last 25 minutes of the flight, Eliza suffered oxygen
desaturations causing a serious brain injury.  (Doc. 72-1 ¶ 15; Doc. 88 ¶ O.)

Much of the remaining issues are disputed.  The McLeans contend that if the first helicopter
had not been forced to abort its flight, Eliza's transport would have taken 95 minutes instead of
more than three hours.  (Doc. 71-2 ¶ 16.)  Had this been the case, the McLeans assert Eliza would
have had access to care at the University of Michigan Hospital during the oxygen desaturations that

would have prevented her injury.  Id. ¶ 17.  The McLeans also allege the second helicopter's stop to refuel unnecessarily delayed Eliza's arrival.  Id. ¶ 20.  They claim that if the helicopter had left Ann Arbor with more fuel, it could have met Eliza and the medical team at one of three other airports, any of which would have meant an earlier arrival at the hospital.  (Doc. 88 ¶ T.)

Largely through experts, the parties dispute whether Corporate Jets negligently maintained the helicopter and if so, whether that was the cause of the burning smell.  The McLeans contend, and Air Methods contests, that the source of the smell was the Modular Medical Cabinet, or "med tower," in the helicopter.  (Doc. 71-2 ¶ 18; Doc. 71-1 at 6.)  The med tower is a removable piece of equipment containing air and suction pumps, oxygen regulators, an I.V. solution warmer, A.C. outlets, and an electrical inverter.  Id. ¶ 22; Doc. 88 ¶ V.

III.   Discussion

A.   Legal Standard

Summary judgment is appropriate only where the parties' submissions show that there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56.  "[T]he district court must draw all factual inferences in favor of, and take all factual assertions in the light most favorable to, the party opposing summary judgment."  Coollick v. Hughes, 699 F.3d 211, 219 (2d Cir. 2012).  The court's function is not to resolve disputed issues of fact but only to determine whether there is a genuine issue of material fact to be tried.  See, e.g., Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986); Rule v. Brine, Inc., 85 F.3d 1002, 1011 (2d Cir. 1996).  "If, as to the issue on which summary judgment is sought, there is any evidence in the record from which a reasonable inference could be drawn in favor of the opposing party, summary judgment is improper."  Fischl v. Armitage, 128 F.3d 50, 56 (2d Cir. 1997) (internal quotation marks and citation omitted).  Credibility assessments, choices between conflicting versions

of the events, and the weighing of evidence are matters for the jury, not for the court on a motion

for summary judgment.  See, e.g., Fed. R. Civ. P. 56(e) 1963 advisory committee's note; Anderson,

477 U.S. at 255.

      B.     Analysis

In this diversity action, the Court applies federal procedural law and Vermont substantive

law.  Erie R.R. Co. v. Tompkins, 304 U.S. 64, 78 (1938).  The Court has already performed its

procedural gate-keeping duty under Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579

(1993), and the Federal Rules of Evidence -- for the most part, the parties' expert testimony is

admissible.  See McLean v. Air Methods Corp., Inc., No. 1:12-cv-241-jgm, 2014 WL 280343 (D. Vt.

Jan. 24, 2014) (Doc. 90).  The experts will assist the trier of fact as to issues outside common

knowledge, and "the opposing party may still contest the weight of the evidence within the

adversarial system."  Id. at *1 (citing Amorgianos v. Nat'l R.R. Passenger Corp., 303 F.3d 256, 267

(2d Cir. 2002)); see Daubert, 509 U.S. at 596 ("Vigorous cross-examination, presentation of contrary

evidence, and careful instruction on the burden of proof are the traditional and appropriate means

of attacking shaky but admissible evidence.").

To support a negligence claim in Vermont, "a plaintiff must show that [1] the defendant

owed her a legal duty, that [2] the defendant breached that duty, that [3] the breach was the

proximate cause of the plaintiff's injury, and that [4] she suffered actual loss or damage."  Lenoci v.

Leonard, 21 A.3d 694, 697 (Vt. 2011).  The "crux" of Air Methods' argument on summary judgment

is that the McLeans cannot establish Corporate Jets' negligence caused the burning smell that forced

the first helicopter to abort its flight.  (Doc. 89 at 2.)  Proving "causation requires both 'but-for' and

proximate causation."  Collins v. Thomas, 938 A.2d 1208, 1211 (Vt. 2007).  But-for causation means

that the plaintiff's damages would not have occurred without the defendant's tortious conduct.  Id.

4

Proving proximate cause requires showing that "the defendant's negligence was 'legally sufficient to result in liability.'"  Id. (quoting Black's Law Dictionary 234 (8th ed. 2004)).  In other words, the damages must be "within the natural flow of injurious consequences" arising from the defendant's breach of duty.  Id. (internal quotation marks and citation omitted).

Proximate cause is "ordinarily an issue to be resolved by the jury unless the proof is so clear that reasonable minds cannot draw different conclusions or where all reasonable minds would construe the facts and circumstances one way."  Roberts v. State, 514 A.2d 694, 696 (Vt. 1986) (internal quotation marks and citation omitted); see also Collins, 938 A.2d at 1211; Estate of Sumner v. Dep't of Soc. & Rehab. Servs., 649 A.2d 1034, 1036 (Vt. 1994).  Air Methods specifically argues that the report and testimony of Mike Clingerman, the McLeans' expert witness on helicopter maintenance, "fails as an evidentiary matter" to establish that Corporate Jets' employees negligently caused the burning smell on the first helicopter.  (Doc. 89 at 2.)  Viewing all factual assertions in the light most favorable to the nonmovants, the Court disagrees and finds the McLeans have "come forward with evidence that would be sufficient to support a jury verdict in [their] favor."  Burt Rigid Box, Inc. v. Travelers Prop. Cas. Corp., 302 F.3d 83, 91 (2d Cir. 2002) (citation omitted).

Both the McLeans and Air Methods have introduced experts to assist with aviation issues outside the lay juror's common knowledge and experience.  On January 24, 2014, the Court ruled Clingerman's report and testimony largely admissible, denying much of Air Methods' motion to preclude his testimony.  McLean, 2014 WL 280343, at *3.  (Doc. 90 at 4-6.)  Clingerman concludes Corporate Jets had a history of maintenance problems with its med towers that went unrepaired. (Doc. 80-2 at 4-5).  His opinion is based on reviewing Corporate Jets' maintenance records for the helicopters and deposition transcripts of various Corporate Jets employees.  McLean, 2014 WL 280343, at *3.  Based on this review, it is Clingerman's opinion that Corporate Jets' regular failure to

5

comply with company and industry standards "with regard to the maintenance, inspection, repair, and documentation" of the med towers aboard the helicopters led to the use of a med tower "with unresolved problems" on Eliza's flight, and the burning smell was "most probably" caused by a mechanical failure in the med tower's air pump.  (Doc. 80-2 at 4).  Clingerman also believes an inverter and loose wires may have played a role as well, but conceded in his deposition that only the air pump was, more likely than not, the cause of the burning smell.  See Doc. 71-1 at 8 (quoting Clingerman).  Although expert testimony, of course, "does not alone have to meet the proponent's burden of proof on a particular issue," USGen New England, Inc. v. Town of Rockingham, 862 A.2d 269, 276 (Vt. 2004) (citation omitted), the Court finds -- viewing Clingerman's report and testimony in the light most favorable to the nonmovants -- a reasonable inference can be drawn in favor of the McLeans that Corporate Jets' negligent maintenance of the med tower caused the burning smell.   The Court notes it has ruled Air Methods' experts admissible as well and will not now, on summary judgment, assess the credibility and weight of the competing experts' proffered testimony (or that of any other witness).[2]

The McLeans have demonstrated a material factual dispute about the cause of the burning smell that precludes summary judgment.  At the very least, reasonable minds could "draw different conclusions" on causation based on the evidence presented.  Roberts, 514 A.2d at 696.  Air Methods

_____

[2] Wilkins v. Lamoille County Mental Health Services, Inc., 889 A.2d 245 (Vt. 2005), upon which Air Methods relies to argue Clingerman's testimony is insufficient, is inapposite.  In Wilkins, the trial court, although not formally ruling on the admissibility of the plaintiff's expert, rejected it as "so deficient in 'substance' and 'basis' that 'it would not be admissible under Vermont Rule of Evidence 702.'"  Id. at 248 n.2 (quoting the trial court).  The Supreme Court of Vermont found "no error in the court's ruling that expert testimony was required" in the medical malpractice claim.  Id. at 253.  Because the "plaintiff failed to adduce an expert opinion that decedent's suicide would not have occurred in the absence of defendant's alleged negligence . . . [she thus] failed to establish the essential causal element of her claim."  Id. at 248.  That is simply not the case here.  In contrast, the Court has ruled Clingerman's testimony (along with both parties' other experts) largely admissible and finds that the McLeans have established a material factual dispute on causation.

has introduced its own expert, Douglas E. Stimpson, who concludes Corporate Jets did not cause

the burning smell aboard the first flight and the second pilot used the correct procedure when

refueling at Saginaw.  See McLean, 2014 WL 280343, at *5.  A jury could find Air Methods'

evidence more persuasive, but the Court's function on summary judgment is not to pick among

experts' conflicting opinions it has already ruled admissible.

As a final note, the parties spill considerable ink on the McLeans' reliance (and, in turn, their

experts' reliance) on circumstantial evidence.  There are two types of evidence -- direct and

circumstantial -- and Vermont makes no distinction between them.  See, e.g., In re LeBlanc,

No. 2006-168, 2006 WL 5838950, at *2 (Vt. Oct. 1, 2006) (unpublished) ("[T]he law generally makes

no distinction between the weight or significance accorded to direct evidence, such as eyewitness

testimony, and circumstantial evidence, which is used to indirectly prove a fact.  Indeed,

circumstantial evidence is routinely admitted and relied upon in civil cases -- which employ a

preponderance of the evidence standard -- to prove the essential elements of the claim." (internal

citation omitted)).  The Supreme Court of Vermont has long held that causation in negligence claims

may be established through direct evidence, circumstantial evidence, or both.  See Healy v. Moore,

187 A. 679, 689 (Vt. 1936) ("Negligence and contributory negligence, or its absence, and proximate

cause, may be shown by circumstantial evidence, if sufficient to justify the inference."); Hatch v.

Daniels, 117 A. 105, 106-07 (Vt. 1922) ("As presented by this record, the question of proximate

cause was one of fact, and the burden of proof was on the plaintiff.  It was not necessary, however,

that this fact should be proved by direct and positive testimony.  It was enough, if there was

evidence, direct or circumstantial, from which a logical inference of the causal relation could be

drawn."); see also Cannata v. Wiener, 789 A.2d 936, 939 (Vt. 2001) ("[C]ircumstantial evidence is

enough to survive summary judgment on the issue of proximate cause of an attorney's negligence."

(internal quotation marks and citation omitted)); accord United States v. Ebinger, 386 F.2d 557, 560 (2d Cir. 1967) ("It is no objection to the finding of causation that . . . the evidence linking [the defendant] to the fire was circumstantial; even purely circumstantial evidence may properly be found to outweigh conflicting direct testimony.").

That the McLeans rely on circumstantial, not direct evidence, does not mean this Court has applied, as Air Methods fears, a "circumstantial evidence theory [] heretofore confined to strict product liability" cases.  (Doc. 89 at 8.)  It does note that the strict product liability cases the McLeans cite are inapplicable, as they cannot take advantage of a relaxed burden of proof on causation or any other element of their claim -- a jury may not simply presume the burning smell was the result of Corporate Jets' negligence.  But viewing all factual assertions in the light most favorable to the nonmovants, the McLeans have simply come forward with evidence sufficient to support a favorable jury verdict.  See Tolan v. Cotton, No. 13-551, --- S. Ct. ---, 2014 WL 1757856, at *1 (U.S. May 5, 2014) (per curiam) (reiterating "the axiom that in ruling on a motion for summary judgment, '[t]he evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor.'" (quoting Anderson, 477 U. S. at 255)).  It is now for the jury, not this Court, to decide whether Corporate Jets breached its duty of care to Eliza and if so, whether any damages are "within the natural flow of injurious consequences" sufficient to establish proximate cause under Vermont law.  Collins, 938 A.2d at 1211 (internal quotation marks and citation omitted).

IV.    Conclusion

For the above reasons, Air Methods' motion (Doc. 71) is DENIED.

Upon review of the Evaluator's report filed July 1, 2013 (Doc. 48), it is hereby ORDERED that the parties shall conduct a second ENE session with David L. Cleary, Esq. before July 25, 2014.

8

They shall share in payment of compensation to the Evaluator and shall inform the Court in writing, by June 13, 2014, of the date selected for the additional session.

SO ORDERED.

Dated at Brattleboro, in the District of Vermont, this 29th day of May, 2014.

/s/ J. Garvan Murtha
Honorable J. Garvan Murtha
United States District Judge

9